UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| BRILEY PIPER, | 5:20-CV-05074-RAL |
| Petitioner, | |
| vs. | OPINION AND ORDER DENYING MOTION TO AMEND JUDGMENT AND GRANTING IN PART MOTION FOR CERTIFICATE OF APPEALABILITY |
| MARTY JACKLEY, ATTORNEY GENERAL OF THE STATE OF SOUTH DAKOTA, JOSEPH ROEMMICH, WARDEN, SOUTH DAKOTA STATE PENITENTIARY; | |
| Respondents. | |

Petitioner Briley Piper is a state death row inmate who has brought this case to challenge his conviction and sentence. This Court denied Piper's motion for neuropsychological testing, Doc. 108, and ultimately granted summary judgment on all the claims raised in his amended petition, Docs. 122, 145. The facts of Piper's crime and the background for his claims are set forth in this Court's lengthy prior opinions. See Docs. 108, 122, 145. Piper now moves to amend the judgment, Doc. 146, and for a certificate of appealability (COA) on certain claims, Doc. 147. This Court denies the motion to amend the judgment but grants in part the motion for a COA.

## I.    Motion to Amend Judgment

### A.    Rule 59(e) Standard

Motions to amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure "serve the limited function of correcting manifest errors of law or fact or to present newly

1

discovered evidence."[1] United States v. Metro. St. Louis Sewer Dist., 440 F.3d 930, 933 (8th Cir.
2006) (cleaned up and citation omitted). They are not a means to reargue issues on which the court
already ruled, Nordgen v. Hennepin Cnty., 96 F.4th 1072, 1077 (8th Cir. 2024), and may not "be
used to introduce new evidence, tender new legal theories, or raise arguments which could have
been offered or raised prior to entry of judgment." Metro St. Louis Sewer, 440 F.3d at 933 (cleaned
up and citation omitted).

## B. Claim IX: Tom Curtis

Tom Curtis was an inmate housed with Piper at the Lawrence County Jail before Piper's
first trial. Doc. 145 at 17–19, 63–69. Curtis testified about Piper's plan to kill two jail guards so
that he could escape, and recounted various statements Piper had made about murdering Chester
Allan Poage. Id. Claim IX addressed the shortcoming in disclosure and use in cross-examination
of Curtis's criminal history. Piper alleged in Claims IX.A–IX.D that the State violated his due
process rights by (1) failing to disclose that Curtis was awaiting sentencing on rape convictions in
Utah when he testified at Piper's resentencing trial in July 2011, and (2) failing to correct Curtis's
omission of the rape convictions when describing his criminal history to the jury. Doc. 67 at 128–
35; see Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that the State violates due process
when it suppresses evidence favorable to the defense and material to the defendant's guilt or
punishment); Napue v. Illinois, 360 U.S. 264, 265, 269 (1959) (holding that the State violated due
process when it failed to correct testimony it knew to be false). Claim IX.E alleged that trial
counsel were ineffective by failing to discover and use for impeachment Curtis's recent rape

---

[1]This Court dismissed all Piper's remaining claims on March 21, 2025, Doc. 145, but opted to wait
until the parties briefed the COA to enter a judgment. Although Piper filed his Rule 59(e) motion
while the parties were briefing the COA, this Court has now entered final judgment and a ruling
on Piper's motion is appropriate.

convictions. Doc. 67 at 135–37; Doc. 131 at 42–51. This Court granted summary judgment on Claims IX.A–IX.D because they were procedurally defaulted and Piper could not show cause for the default. Doc. 122 at 97–106. It granted summary judgment on Claim IX.E because Piper failed to show prejudice under Strickland v. Washington, 466 U.S. 668 (1984). Doc. 145 at 61– 69.

Piper now argues that this Court committed a manifest error of law by rejecting Claim IX.E because it failed to "apply completely" the materiality standard in Napue and Giglio v. United States, 405 U.S. 150 (1972). Doc. 146 at 3. Claim IX.E alleged ineffective assistance, so this Court analyzed whether Piper had shown a reasonable probability that raising in cross-examination or otherwise Curtis's rape convictions would have caused at least one juror to weigh the aggravating and mitigating circumstances differently and vote for life. Doc. 145 at 61–69. This is the standard the Supreme Court applies to ineffective assistance of counsel claims, Strickland, 466 U.S. at 695; Andrus v. Texas, 590 U.S. 806, 822 (2020) (per curiam), and it is the same standard Piper applied in his brief, Doc. 131 at 46, 49–50. Piper's real complaint seems to be that, under the Supreme Court's recent decision in Glossip v. Oklahoma, 145 S. Ct. 612 (2025), this Court should have assigned more significance to Curtis's rape convictions and his omission of them when describing his criminal history to the jury. Doc. 146 at 4–5. This Court's prior opinion distinguished Glossip and explained at length why Piper could not show a reasonable probability that trial counsel's use of the rape convictions would have caused at least one juror to vote for life. Doc. 145 at 64–69. Piper's rehash of the arguments he made in his brief and at the hearing does not show manifest error.

Piper also argues that this Court should reconsider its holding that he has not shown cause to excuse the procedural default of the Brady and Napue arguments he raised in Claims IX.A–

3

IX.D.  Piper argued in prior briefing that the State's failure to disclose Curtis's updated criminal history provided cause to excuse default of the Brady and Napue claims.  Doc. 67 at 136; Doc. 86 at 47.  According to Piper, this Court rejected that argument because "Piper had not provided any authority suggesting that the State knew, or should have known, that Curtis was lying about his Utah convictions."  Doc. 146 at 5.  Piper claims this holding was wrong because Glossip shows that he need not provide direct evidence that the prosecution knew Curtis's testimony was false.

        Piper's argument mischaracterizes this Court's holding and does not warrant relief under Rule 59(e).  As this Court explained in its prior opinion, a prosecutor's suppression of evidence may sometimes constitute cause to excuse procedural default of a Brady or Napue claim.  See Banks v. Dretke, 540 U.S. 668, 691–92 (2004); Dansby v. Payne, 47 F.4th 647, 657, 659–60 (8th Cir. 2022).  This rule, however, only applies when the suppression of evidence "is the reason for the petitioner's default."  Dansby, 47 F.4th at 659.  "A petitioner has not shown cause if he had evidentiary support for his claim before his default, or if the evidence was reasonably available through other means."  Id. (cleaned up and citations omitted).  Although this Court noted that Piper "has not cited any evidence that the State knew of Curtis's rape convictions," Doc. 122 at 101, that was not the only reason to not find cause for Piper's procedural default.  Rather, this Court explained that Piper could not demonstrate cause because Curtis's rape convictions were reasonably available to him and the State's alleged suppression of the convictions was not the reason for Piper's default.  Doc. 122 at 100–06.  Piper's current motion does not even mention that reasoning, let alone explain why it is wrong.

### C.  Claim XI

        Claim XI alleged that Piper's guilty pleas were not knowing, voluntary, and intelligent because the state trial judge incorrectly told him that all twelve jurors would need to agree before

4

he could receive a life sentence and that pleading guilty would require him to be sentenced by the court rather than a jury. Doc. 67 at 146. The Supreme Court of South Dakota rejected this claim when Piper raised it in his state habeas case, Doc. 2-1 at 90–100, finding that res judicata applied because Piper failed to raise the claim when appealing his initial death sentence and in his first habeas proceeding, and that the claim would fail on the merits "[e]ven if we were inclined to review" it, Piper v. Young, 936 N.W.2d 793, 803–07 (S.D. 2019).

As relevant here, Piper argued in prior briefing that this res judicata ruling did not bar Claim XI because it depended on federal law. See Lee v. Kemna, 534 U.S. 362, 375 (2002) (explaining that a state procedural ruling will bar federal review if the rule is "*independent* of the federal question and *adequate* to support the judgment" (cleaned up and citation omitted)). He claimed that the Supreme Court of South Dakota's decision in Haase v. Weber, 693 N.W.2d 668 (S.D. 2005), created a "fundamental-fairness exception to the application of res judicata," Doc. 104 at 4, that South Dakota courts equate fundamental fairness with due process, and that the Supreme Court of South Dakota's rejection of his fundamental fairness argument "was, in essence, a constitutional due process ruling," Doc. 67 at 160–61. This Court disagreed, finding that Haase did not create a fundamental-fairness exception requiring South Dakota courts to review the underlying claim to determine whether it would be fundamentally unfair, under federal due process principles, to apply res judicata and that the Supreme Court of South Dakota's rejection of Piper's fundamental fairness argument had nothing to do with the federal merits of his guilty plea claim. Doc. 122 at 44–46, 116–18. As this Court explained, Piper cited no case suggesting that the Supreme Court of South Dakota's rejection of his fundamental fairness argument—made without reference to the merits of his claim or federal due process principles—somehow made the res judicata ruling dependent on federal law. Doc. 122 at 117.

5

Piper now argues that this Court's decision was manifestly erroneous, largely repeating his prior argument about Haase and that the Supreme Court of South Dakota's decision on fundamental fairness was interwoven with federal law. These arguments fail for the reasons explained in this Court's prior decision. Doc. 122 at 44–46, 116–18. Piper also claims that the res judicata ruling depended on federal law because he argued to the Supreme Court of South Dakota that state appellate counsel's ineffectiveness made it fundamentally unfair under Haase to apply res judicata. But this argument doesn't justify relief either. First, Piper could have raised this argument in a prior round of briefing but did not. See Nordgren, 96 F.4th at 1077 (explaining that Rule 59(e) cannot be used to "raise arguments that could have been made prior to the issuance of judgment"). Second, Piper has not cited any South Dakota case that requires courts to consider the merits of the underlying claim or determine whether federal law was violated when applying res judicata to habeas claims, and nothing in the Supreme Court of South Dakota's opinion in Piper, 936 N.W.2d 793, suggests that it did so. This Court correctly concluded that the res judicata ruling was independent of federal law.[2] See Murden v. Artuz, 497 F.3d 178, 193 (2d. Cir. 2007) ("Where a state court explicitly relies on a state procedural bar and does not rest its application of the bar on its consideration of the merits, the ruling is independent of federal constitutional law.").

Piper also claims that this Court can review Claim XI under Cone v. Bell, 556 U.S. 449 (2009). The Supreme Court in Cone held that a state court's refusal to "review the merits of a petitioner's claim on the ground that it has done so already" does not bar federal habeas review. Id. at 466. Cone does not apply here. The Supreme Court of South Dakota held that claim

---

[2]Piper argues that the Supreme Court of South Dakota's application of res judicata to his Brady and Napue claims lacked independence for the same reasons the res judicata ruling on Claim XI lacked independence. That argument fails for the reasons discussed above.

preclusion barred Piper's guilty plea claim because he had failed to raise it in prior proceedings, not because the court had previously reviewed the claim. Piper, 936 N.W.2d at 803–07.

**D. Claim I**

Claim I of Piper's amended petition alleged that his trial attorneys Robert Van Norman and Michael Stonefield were ineffective by failing to conduct a timely and adequate background investigation and failing to investigate and present cognitive functioning evidence. Doc. 67 ¶¶ 44–126. A state judge appointed Van Norman and Stonefield to represent Piper in August 2009 and his trial occurred in July 2011. Piper argued in his petition that the "foundational defect" in his attorneys' representation was their "late start," and that they "squandered the first year and one-half" after being appointed "before they began their background investigation." Doc. 67 at 22.

But the record did not bear this argument out. This Court detailed the efforts of Van Norman and Stonefield previously, explaining that they began investigating Piper's background in August 2009 and continued developing his mitigation case thereafter. Doc. 122 at 3–7, 56–57, 62–66. This Court previously observed:

> compensation vouchers Van Norman and Stonefield submitted
> show that they began investigating Piper's mitigation case almost
> immediately, including speaking with Piper's prior attorneys,
> researching potential mitigation specialists, gathering records, and
> wading through the voluminous files from Piper's prior case and the
> cases of Page and Hoadley. Doc. 121-4 at 458–473.

Doc. 122 at 3 (footnotes omitted). Piper now argues that this sentence was manifestly erroneous because his attorneys did not "meaningfully" begin "to investigate mitigation almost immediately." Doc. 146 at 10. He contends that the compensation vouchers this Court relied on actually show that his attorneys did very little mitigation work between August and October 2009.

Piper comes nowhere close to showing manifest error. Whatever amount of mitigation work Piper's attorneys did between August and October 2009, the evidence this Court cited—both

7

in support of the sentence Piper complains of and throughout its prior opinion—disproves Piper's argument that his attorneys waited 18 months to begin investigating his background. See Doc. 122 at 3–7, 56–57, 62–66. The question raised by Claim I was whether Piper had a substantial claim of ineffective assistance under Martinez v. Ryan, 566 U.S. 1 (2012), and the evidence showed that he did not. See Doc. 122 at 54–66.

Piper also argues that this Court's finding was manifestly erroneous given the record as a whole and what counsel failed to do. He argues that his attorneys should have retained a mitigation specialist and mental health experts earlier and they squandered much of the time they had to prepare for his trial. Piper made these same arguments in earlier briefing and they fail for the reasons explained in this Court's prior opinion. See Doc. 122 at 62–66.

## II.    Certificate of Appealability

A prisoner needs a COA to appeal a final order denying a § 2254 petition. 28 U.S.C. § 2253(c). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." § 2253(c)(2). A COA is claim specific, meaning that each claim individually must meet the substantial showing standard. See § 2253(c)(3) ("The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2)."). To meet this standard, the petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (cleaned up and citation omitted).

This standard looks slightly different depending on whether a claim was dismissed based on procedural default or on the merits. See Slack v. McDaniel, 529 U.S. 473, 484 (2000). When

8

the district court finds that a claim is procedurally defaulted, the petitioner must show that reasonable jurists could debate both the validity of the constitutional claim and the procedural ruling. Id. When the court rejects a constitutional claim on the merits, the "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. And when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies, the question becomes whether the district court's application of AEDPA's deferential standards to the petitioner's claim was debatable. Becker v. Sec'y Pa. Dep't of Corrs., 28 F.4th 459, 462 (3d Cir. 2022) (holding that AEDPA's "deferential standard also governs our decision whether to issue a COA to a habeas petitioner seeking to appeal a district court's order to which § 2254's deferential standard applies"). At least three federal circuits have concluded that a death sentence impacts whether to issue a COA. Harper v. Lumpkin, 64 F.4th 684, 690 (5th Cir. 2023) (per curiam) ("In a capital case, any doubts as to whether a COA should issue must be resolved in the petitioner's favor." (cleaned up and citation omitted)); Porter v. Gramley, 112 F.3d 1308, 1312 (7th Cir. 1997) ("[I]n a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate but the severity of the penalty does not in itself suffice to warrant the automatic issuing of a certificate." (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983))); Williams v. Woodford, 384 F.3d 567, 583 (9th Cir. 2004) ("Although not dispositive, in a capital case, the nature of the penalty is a proper consideration in determining whether to issue a certificate of appealability." (cleaned up and citation omitted)); see also 16AA Catherine T. Struve, Federal Practice and Procedure § 3968.1 (5th ed. May 2025 update) ("When performing the COA analysis, it is proper to take into account the fact that the petitioner is under a sentence of death."). With these standards in mind, this Court turns to Piper's arguments.[3]

---

[3]Respondents do not oppose Piper's motion for a COA on any of his claims. Doc. 148.

## A.    Claim I and an evidentiary hearing on whether Piper was at fault for failing to develop the record

Piper submitted evidence that was not part of the state court record in support of Claim I. He filed affidavits from experts, family members, and others and moved for an order allowing his experts to test him in prison for brain damage and Fetal Alcohol Spectrum Disorder (FASD). AEDPA, however, strictly limits a federal habeas court's authority to consider new evidence the prisoner neglected to offer in state court. See 28 U.S.C. § 2254(e)(2). If the prisoner "has failed to develop the factual basis of a claim in State court proceedings," § 2254(e)(2) bars federal courts from holding "an evidentiary hearing on the claim"—or, indeed, even considering extra-record evidence submitted to support the claim—unless the prisoner can satisfy some narrow exceptions not applicable here. 28 U.S.C. § 2254(e)(2)(A)(i), (ii); Shinn v. Ramirez, 596 U.S. 366, 383–90 (2022); Holland v. Jackson, 542 U.S. 649, 653 (2004) (per curiam). These strict limits in § 2254(e)(2) apply only when a prisoner is "at fault" for failing to develop the factual basis of a claim, meaning that he "bears responsibility for the failure." Shinn, 596 U.S. at 382 (cleaned up and citation omitted).

This Court denied Piper's motion for testing because it deemed him "at fault" under precedent applying § 2254(e)(2) for his state habeas counsel's alleged failure to develop the evidentiary record. Doc. 108 at 29–45. This Court also denied Piper's request for a hearing to determine whether state habeas counsel's "failures constituted such gross or extreme misconduct that it severed the attorney-client relationship" and relieved Piper of responsibility for counsel's alleged failure to develop the record. Doc. 108 at 40. Since Piper was at fault for state habeas counsel's failures, this Court held that it could not consider the evidence submitted in support of Claim I either on the merits of that claim or when assessing cause and prejudice under Martinez. Doc. 122 at 51–54. Considering the state court record only, this Court granted summary judgment

10

on Claim I because Piper had not shown a "substantial" claim of ineffective assistance necessary to avoid procedural default under Martinez. Doc. 122 at 54–66.

Piper now seeks a COA on whether this Court should have granted an evidentiary hearing to allow him to show that he was not at fault for failing to develop the state court record. He also seeks a COA on Claim I, arguing that a hearing would have allowed him to show that he was not at fault and that this Court could then have considered the evidence he failed to present in state court. This additional evidence, Piper argues, shows that Claim I meets the standard for a COA.

This Court grants Piper a COA on Claim I and on whether Piper was entitled to a hearing to show that he was not at fault for failing to develop the record in state court. Claim I alleged that Piper's records contained many red flags suggesting that he may have brain damage and FASD but that Van Norman and Stonefield failed to pursue and develop this evidence. Brain damage can be an important mitigating factor in a capital case, see Porter v. McCollum, 558 U.S. 30, 36 (2009) (per curiam); Rompilla v. Beard, 545 U.S. 374, 392–93 (2005), and Claim I and its related motion for testing was the most briefed issue before this Court. This Court's decision on Claim I and the requests for testing and hearings depended in large part on the Supreme Court's 2022 opinion in Shinn. See Doc. 108 at 29–42; Doc. 122 at 48–54. Because this is a death penalty case and the law on what types of hearings are available after Shinn is still developing, a COA is appropriate.

## B.    Res Judicata

This Court previously held that, as a general matter, South Dakota's res judicata rule was adequate and independent and thus barred review of several of Piper's claims. Doc. 122 at 38–46. This Court also rejected Piper's argument that the Supreme Court of South Dakota's application of res judicata to his guilty plea claim (Claim XI) depended on federal law and was too novel to

11

bar federal review. Id. at 108–18. Piper now seeks a COA on whether South Dakota's application of the res judicata rule is adequate and independent in general, on whether res judicata was adequate and independent as applied to Claim XI, and on the merits of Claim XI.

Piper is entitled to a COA on these issues given their importance and his sentence of death. The Supreme Court of South Dakota's opinion in Piper's habeas case gave the most attention to Piper's guilty plea claim and whether res judicata barred it. Piper, 936 N.W.2d at 803–09. The Supreme Court of South Dakota's decision in Haase arguably creates a bit of a wrinkle in its habeas jurisprudence, and the Eighth Circuit has never ruled on the independence and adequacy of South Dakota's res judicata rule in the circumstances here.

## C.    Constitutional challenge to AEDPA

This Court previously rejected Piper's argument that the Supreme Court's decision in Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024), renders AEDPA unconstitutional as violative of Article III of the Constitution. The only federal appellate court to have ruled on this issue is the Sixth Circuit, which held that Loper Bright did not "impliedly overturn[] AEDPA deference." Miles v. Floyd, No. 24-1096, 2025 WL 902800, at *3 (6th Cir. Mar. 25, 2025). Piper now seeks a COA on this issue. Although this Court does not believe that Loper Bright made AEDPA unconstitutional, its effect on AEDPA is still being litigated and at least one district court has granted a COA on the issue. Doc. 143-3. Given these circumstances, reasonable jurists could find that Piper's challenge to AEDPA is "adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 336 (cleaned up and citation omitted).

## D.    Tom Curtis

As stated above, Piper alleged in Claims IX.A–IX.D that the State violated his due process rights by (1) failing to disclose that Curtis was awaiting sentencing on rape convictions in Utah

12

when he testified at Piper's resentencing trial in July 2011, and (2) failing to correct Curtis's omission of the rape convictions when describing his criminal history to the jury. Claim IX.E alleged that trial counsel were ineffective by failing to discover and use for impeachment Curtis's recent rape convictions. Doc. 67 at 135–37; Doc. 131 at 42–51. Piper seeks a COA on this Court's holdings that he could not show cause to avoid the procedural default of his Brady and Napue claims and that he failed to establish prejudice on his ineffective assistance claim.

A COA on Claim IX is appropriate. This Court's grant of summary judgment on Claims IX.A–IX.D involved detailed factual findings and the "thorny" question of whether claims involving the nondisclosure of Curtis's rape convictions could have been raised on direct appeal. Doc. 122 at 100–06. Reasonable jurists could disagree on this Court's procedural ruling as well as on the validity of Piper's Brady and Napue claims. This Court resolved Claim IX.E on de novo review because of uncertainty over whether the Supreme Court of South Dakota viewed Curtis's rape convictions as part of the state court record. Doc. 145 at 61–69. Reasonable jurists could debate this Court's grant of summary judgment on Claim IX.E, especially given the Supreme Court's recent decision in Glossip.

### D.    Sister Crowley

Claim V alleged that Van Norman and Stonefield were ineffective when the prosecution cross-examined Sister Gabrielle Crowley about writing a letter to a female inmate at Piper's urging. Piper argued that Sister Crowley's letter did not violate prison policy and that trial counsel should have objected to the cross-examination, asked for an offer of proof that such a policy existed, and requested a recess to research the issue themselves. Doc. 67 at 93; Doc. 131 at 35–36. Piper included an affidavit from a paralegal about the prison's policy with his federal habeas petition but never presented that affidavit to the Supreme Court of South Dakota. Doc. 145 at 53.

13

This Court granted summary judgment on Claim V, concluding that the Supreme Court of South

Dakota's rejection of the claim was a reasonable determination of the facts and law under AEDPA

on the record before it. Doc. 145 at 51–56. This Court also found that Claim V would fail under

AEDPA even if Piper's attorneys could have shown that the letter did not violate prison policy.

Id.

Piper has not met the standard for a COA on Claim V. Reasonable jurists could not debate

that the Supreme Court of South Dakota's rejection of Claim V was reasonable under AEDPA.

Although Piper argues that state habeas counsel was ineffective by not presenting evidence to

support Claim V, he has not explained how this Court could consider the paralegal's affidavit when

the Supreme Court South Dakota decided Claim V on the merits. See Cullen v. Pinholster, 563

U.S. 170, 185 (2011) ("If a claim has been adjudicated on the merits by a state court, a federal

habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that

state court."); Vandross v. Stirling, 986 F.3d 442, 450–51 (4th Cir. 2021) (holding that ineffective

assistance of postconviction counsel did not allow federal court to review new evidence submitted

in support of a claim that the state court had adjudicated on the merits).

## E.    Cumulative Error

Claim XIII alleged that Piper is entitled to habeas relief because of the cumulative prejudice

of the constitutional violations in his case. He argued that he raised this claim in his reply brief in

Piper, 936 N.W.2d 793, but says that the Supreme Court of South Dakota never addressed it.[4] Doc.

---

[4] Piper previously asked this Court to find that he properly exhausted this claim by raising it in his
reply brief before the Supreme Court of South Dakota. As this Court recognized, however, the
Supreme Court of South Dakota does not consider arguments raised for the first time in a reply
brief, Mach v. Connors, 979 N.W.2d 161, 173 (S.D. 2022); State v. Roedder, 923 N.W.2d 537,
545 (S.D. 2019), and courts have held that a petitioner procedurally defaults a claim raised for the
first time in a reply brief when the state court's rules deem arguments raised in that manner waived,
see Atwater v. Crosby, 451 F.3d 799, 810 (11th Cir. 2006).

14

67 at 168.  This Court granted summary judgment on Claim XIII because the Eighth Circuit has held that neither the cumulative effect of trial errors nor the cumulative effect of attorney errors are grounds for habeas relief.  Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996); see also id. ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation."); Middelton v. Roper, 455 F.3d 838, 851 (8th Cir. 2006) ("We repeatedly have recognized a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." (cleaned up and citation omitted)).  Piper now seeks a COA on Claim XIII, arguing that reasonable jurists could debate the Eighth Circuit's refusal to entertain cumulative error analysis.  This Court denies a COA on Claim XIII because reasonable jurists could not debate that Eighth Circuit precedent forecloses the claim.  See Hamilton v. Sec'y Fla. Dep't of Corrs., 793 F.3d 1261, 1266 (11th Cir. 2015) (per curiam) ("[N]o COA should issue where the claim is foreclosed by binding circuit precedent because reasonable jurists will follow controlling law." (cleaned up and citation omitted)).

## III.    Conclusion

For the reasons explained above, it is

ORDERED that Piper's Motion to Alter or Amend Judgment, Doc. 146, is denied.  It is further

ORDERED that Piper's Motion for Certificate of Appealability, Doc. 147, is granted as to the following claims and issues:

> (1) Claim I and whether this Court should have held an evidentiary hearing on whether Piper was at fault for failing to develop the record in state court.
>
> (2) Claim XI, whether South Dakota's application of the res judicata rule is adequate and independent in general, and whether res judicata was adequate and independent as applied to Claim XI.
>
> (3) Constitutional challenge under Loper Bright to AEDPA.

(4) Claim IX involving Tom Curtis.

It is further

ORDERED that Piper's Motion for Certificate of Appealability, Doc. 147, is otherwise denied.

DATED this 16ᵗʰ day of July, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE